UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE KEION HARDY,

       Petitioner,                            Case No. 07-14610
                                                Hon. Marianne O. Battani
v.                                                 Magistrate Judge Paul J. Komives

KURT JONES,

       Respondent.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
DENYING PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS**

Petitioner Jermaine Kelon Hardy, a state prisoner currently confined at the Carson City Correctional Facility in Carson City, Michigan, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. The Court referred this matter to Magistrate Judge Paul J. Komives for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

In his Report and Recommendation, Magistrate Judge Komives recommends that this Court deny the petition. See Report and Recommendation ("R&R") at 32. Petitioner timely filed objections, which the Court has considered and reviewed *de novo*. 28 U.S.C. § 636(b)(1). For the reasons stated herein, the Court **REJECTS** Petitioner's objections, **ADOPTS** the Report and Recommendation, and **DENIES** the Petition for Writ of Habeas Corpus.

**I.    BACKGROUND**

On September 4, 2001, Petitioner was convicted by a Wayne County Circuit Court jury of assault with intent to commit murder, two counts of assault with intent to

rob while armed, possession of a firearm by a felon, and possession of a firearm during a felony. He was sentenced to two concurrent terms of 38 to 80 years for the assault convictions, a concurrent term of one to five years for the felon in possession conviction, and a mandatory consecutive term of two years for the felony firearm conviction.

Hardy appealed to the Michigan Court of Appeals, arguing (1) that he was denied a fair trial because the trial judge had told the jury venire that he had a prior conviction for armed robbery, (2) that there was insufficient evidence to support a guilty verdict of assault with intent to commit murder, (3) that the trial court erred in refusing to grant his requested jury instruction as to a lesser included offense of attempted armed robbery, (4) that Hardy was denied effective assistance of trial counsel because the latter failed to move for a mistrial and otherwise follow Hardy's instructions, and (5) that the prosecutor inappropriately built up the credibility of the prosecution's witnesses in closing argument. Finding no merit to Petitioner's claims, the Court of Appeals affirmed his conviction and sentence. People v. Hardy, No. 242199, 2003 WL 22681390 (Mich. Ct. App. Nov. 13, 2003) (per curiam). Petitioner then unsuccessfully sought leave to appeal all five issues to the Michigan Supreme Court, which also denied Hardy's motion to remand for an evidentiary hearing on newly discovered evidence. People v. Hardy, 680 N.W.2d 897 (Mich. 2004).

Hardy subsequently filed a motion for relief from judgment in the trial court, raising claims of newly discovered evidence and perjury, improper determination of facts at sentencing by the trial judge, and ineffective assistance of counsel. The trial court denied this motion. Petitioner applied for leave to appeal to the Michigan Court of Appeals and the Michigan Supreme Court, raising three additional claims: (6) that the

2

trial court erred in denying Hardy's motion for relief from judgment on the basis of newly discovered evidence, (7) that Hardy was denied effective assistance of trial counsel because his attorney failed to obtain or attempt to obtain a gunshot residue test, and (8) that Hardy's appellate counsel was ineffective for failing to raise on direct appeal his claims relating to the gunshot residue test.  The Michigan Court of Appeals and the Michigan Supreme Court each denied Petitioner's applications because they "fail[ed] to meet the burden of establishing entitlement to relief under" MICH. CT. R. 6.508(D). People v. Hardy, 741 N.W.2d 367 (Mich. 2007); People v. Hardy, No. 272479 (Mich. Ct. App. May 18, 2007).

Thereafter Petitioner filed the instant application for a writ of habeas corpus.  He raises the same eight claims he advanced to the state appellate courts.  Petitioner objects to the Magistrate Judge's recommendation for seven on these eight claims.

## II.     STANDARD OF REVIEW

In cases where a Magistrate Judge has submitted a Report and Recommendation and a party has properly filed objections to it, the district court must conduct a *de novo* review of those parts of the Report and Recommendation to which the party objects.  28 U.S.C. § 636(b)(1).

## III.    ANALYSIS

The Court observes at the outset that a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Instead, a state prisoner seeking habeas relief under section 28 U.S.C. § 2254 must show by a preponderance of the evidence that he is "in custody in

3

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers only to "the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).  In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 411.  Consequently, a federal habeas court may not issue the writ simply because it concludes that the state court decision applied clearly established federal law erroneously or incorrectly.  "Rather, it is the habeas applicant's burden to show that the state court applied [a Supreme Court case] to the facts of his case in an

4

objectively unreasonable manner." Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam)).

Finally, this Court must presume that a state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. See Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998). With these standards in mind, the Court turns to the merits of Petitioner's objections.

### A. Trial Court's Statement Regarding Hardy's Prior Conviction

With respect to Petitioner's first claim, the Magistrate Judge found that although the trial court inadvertently mentioned to the jury pool that Hardy's prior felony conviction was for an armed robbery, the trial court took appropriate steps to remedy the error by immediately instructing the jury that information relating to Petitioner's prior felony conviction could be used only as evidence as to the charge pending against him for possession of a firearm by a felon. Moreover, a presumption exists that jurors adhere to the court's instructions to them.

Petitioner objects to labeling the trial court's error "inadvertent" because "it was repeated to the jury." (Obj's 1.) The Court finds that this claim does not raise a question of federal law, despite Petitioner's suggestion that "the admission of evidence that violates state law . . . may constitute a violation of due process" (id.), Petitioner's argument fails to overcome the presumption that jurors heed the trial court's instructions. The mistake is nevertheless not a cognizable claim for habeas review, because it does not implicate clearly established federal law. See 28 U.S.C. § 2254(d)(1).

5

**B.     Sufficiency of the Evidence to Support a Guilty Verdict of Assault with Intent to Commit Murder**

The Magistrate Judge found that there was evidence from which a rational jury could conclude that Petitioner fired directly at one of the victims, resulting in the charge of assault with intent to commit murder. Accordingly, he recommended that Petitioner be denied relief on his second claim. The Court agrees.

Section 750.83 requires that three elements be proven for a defendant to be found guilty of assault with intent to commit murder: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. MICH. COMP. LAWS ANN. § 750.83. Although Petitioner claims that he fired a gun through a money slot into an office where one of the victims was hiding only to frighten that victim, the element of intent to kill may be shown both by direct and circumstantial evidence. Warren v. Smith, 161 F.3d 358, 360 (6th Cir. 1998) (citing People v. Hoffman, 570 N.W.2d 146, 150 (Mich. Ct. App. 1997)). The fact that the evidence supports other conclusions is not sufficient for Petitioner to succeed on this claim. The prosecution's evidence need not rule out all competing theories, and habeas review is not an opportunity to reexamine every issue already determined in state court. Herrera, 506 U.S. at 401.

Petitioner claims that the Magistrate Judge misinterpreted the record by misidentifying the location of the money slot. According to Hardy, the money slot through which Petitioner was alleged to have shot at one of the victims was located "in front of the bulletproof office," not on the door. However, even if the record supported Hardy's assertion, Petitioner cannot support his conclusion that "it is virtually impossible for a person to fire a gun through the money slot with the intent to murder." (Obj's 4.) The location of the money slot, absent other evidence not brought to the Court's

6

attention, in and of itself is insufficient to reach the conclusion that no rational jury could have reached a guilty verdict on the count of assault with intent to commit murder.

### C.    Prosecutorial Misconduct in Vouching for Witnesses' Credibility

Petitioner argues that the prosecutor improperly vouched for the credibility of its witnesses. The Michigan Court of Appeals held, and the Court agrees, that "[t]he prosecutor argued that the witness was worthy of belief based on the evidence and reasonable inferences drawn from the evidence." Hardy, 2003 WL 22681390, at *7. Furthermore, Petitioner has not explained in his objection which of the witnesses' credibility was bolstered inappropriately.

### D.    Newly Discovered Evidence that Detective Wasmund Lied at Trial

As to Petitioner's sixth claim, even accepting his allegations as true, he cannot satisfy his burden in proving a *Brady* violation. Petitioner asserts that an evidence technician took swabs of his face and hands for possible gunshot residue from the pistol he was alleged to have shot. (R&R at 23.) It was undisputed that, if Petitioner's assertion is true, no such test was actually performed. (Id.) At trial, Detective Wasmund testified that he had submitted the swabs to the police laboratory, but that the machine used to perform the tests was broken from the time the swabs were submitted until trial. (Id.) An affidavit from a chemist in that laboratory stated that the swabs were never received by the laboratory. (Id.) In fact, Wasmund never submitted the swabs for testing. (Id.) Petitioner asserts only that Wasmund perjured himself and that the prosecution suppressed exculpatory evidence; Hardy did not testify that the swabs were taken, nor that the test would have been negative for gunshot residue, nor that he requested access to the test results. (Id.)

7

A conviction based in part on perjured testimony "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (footnote omitted). The burden is on Petitioner to demonstrate that the prosecutor knowingly presented material false evidence. Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1999). Assuming the truth of Petitioner's allegations — including that Detective Wasmund's testimony was the product of a "willful intent to deceive" the trial court (Obj's 5) — he is unable to show a reasonable likelihood that the jury's judgment would have been different but for the perjured testimony. Five eyewitnesses testified about Hardy's involvement, Hardy suffered wounds from a store clerk's shotgun, and his brother confessed and detailed Hardy's involvement in the crime.

Petitioner contends that a "skilled counsel" would have exposed Detective Wasmund's perjured testimony and went on to suggest scenarios that are unsupported by the record, including that one store employee had "studied her answers," that two store employees made false statements to police that they denied at trial, and that Wasmund's testimony was "racially motivated" (Obj's 7). Petitioner cannot demonstrate that the jury's judgment could have been altered by these suggestions which are unsupported. Accordingly, the Court denies habeas relief on this ground.

### E.     Ineffective Assistance of Counsel

Petitioner alleges three separate instances in which he was denied effective assistance of counsel; specifically that two occurred at trial and one on appeal. Petitioner claims that his trial attorney's failure to move for a mistrial following the court's accidental revelation to the jury of Petitioner's prior assault conviction, as well as his trial

8

attorney's failure to pursue the results of a gunshot residue test, amounted to ineffective assistance.

With respect to trial counsel's failure to move for a mistrial, Petitioner cannot demonstrate that he was prejudiced, or demonstrate that a mistrial would have been granted if sought. Moreover, his contention is more dubious considering the trial court's curative instructions to the jury to disregard the court's error.

Hardy also challenges the Magistrate Judge's recommendation that relief be denied on his claim that his trial counsel was ineffective for failing to pursue a gunshot residue test. Even if the test was negative, Petitioner cannot satisfactorily establish that the jury would have credited Hardy's own evidence over five eyewitnesses, Hardy's wounds from a store clerk's shotgun, and the confession by Hardy's brother as to each of their involvement in the crime. Considering the weight of the evidence against Hardy and the likelihood that the jury would find him guilty as charged, it was reasonable for trial counsel to pursue a general theory of reasonable doubt rather than risk that the test returned positive, thereby confirming substantial evidence of Petitioner's guilt. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 687 (1984). The swabs were taken several hours after the robbery, and may well have been meaningless if the residue was washed off. Additionally, trial counsel capitalized on the absence of the test in her reasonable doubt defense. See Bonnell v. Mitchell, 212 Fed. App'x 517, 522-23 (6th Cir. 2007). In Bonnell, trial counsel suggested that the

9

absence of a positive gunshot residue test created the inference that had such results existed, the prosecution would have sought to admit them into evidence. Id.

Hardy also objects to the Magistrate Judge's recommending denying habeas relief because Petitioner cannot show that his claims would have succeeded on appeal. For the purpose of satisfying the Sixth Amendment right to effective assistance of counsel, "[t]he proper measure of attorney performance [is] reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. The very claims Petitioner argues that his appellate counsel should have made have been determined by this Court to lack merit. Accordingly, the Court adopts the Magistrate Judge's recommendation that habeas relief be denied on the grounds that Petitioner was denied effective assistance of trial and appellate counsel.

## IV.   CONCLUSION

The Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety. The Court **REJECTS** Petitioner's objections and **DENIES** the Petition for Writ of Habeas Corpus. The Court further **DENIES** Hardy's Motion for Expansion of Record.

**IT IS SO ORDERED.**

s/Marianne O. Battani

MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: July 24, 2009


### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this order was served upon all parties.

s/Bernadette M. Thebolt
Case Manager
